[No. 22938. *En Banc.* January 14, 1932.]

W. T. HARTFORD, *Appellant*, v. J. W. FAW *et al.,*
*Respondents.*[1]

*LaBerge, Cheney & Hutcheson,* for appellant.

BEALS, J.—During the month of January, 1925, one
R. Stoller, being the owner of a hotel in the city of
Camas, Washington, leased the same for the term of

[1]Reported in 7 P. (2d) 4.

five years to defendants, J. W. and Ethel M. Faw, who were the owners of the furniture and movable equipment used in the operation of the hotel property. Defendants, having operated the hotel for several months, early in May, 1925, assigned the lease, with Mr. Stoller's consent, and sold the furniture and equipment, to Stanley and Claire Koron, husband and wife, a portion of the purchase price being evidenced by a note in the sum of $1,470, secured by a mortgage on the hotel furniture.

During the month of June following, plaintiff, W. T. Hartford, claiming title to the lease and furniture as successor in interest to Mr. and Mrs. Koron, demanded of the agent of defendants Faw, who were then in possession of the hotel, that the same be turned over to him. Defendants, by their agent, refused to deliver possession to plaintiff, and defendants soon thereafter sold the property to an innocent purchaser who had no notice of plaintiff's claim.

Plaintiff instituted this action against defendants, claiming damages from them as for conversion of the lease and of the personal property. The action was tried to a jury, and at the close of plaintiff's case the court sustained defendants' motion for a nonsuit, discharged the jury and entered judgment dismissing the action, from which plaintiff appeals.

Appellant assigns as error rulings of the trial court sustaining respondents' objections to testimony offered on appellant's behalf; upon the ruling of the trial court in respondents' favor upon their motion for a nonsuit; upon the denial by the court of appellant's motion for a new trial; and upon the entry of judgment dismissing the action.

The lease from Mr. Stoller to respondents contains the following provision: "Party of the second part agrees not to assign this lease without the consent of

the lessor." The written consent of the landlord to the assignment from respondents to Mr. and Mrs. Koron was endorsed thereon at the time of the assignment, but it is not contended that Mr. Stoller ever consented to any other transfer of the lease, save in so far as appellant contends that such consent was orally granted to him, concerning which matter the trial court refused to allow appellant to testify.

It appears from the evidence that Claire Koron, assuming to act for the community composed of her husband and herself, under date May 21, 1925, executed an assignment of the lease in blank, together with a bill of sale of the furniture, also in blank, which documents were, for a valuable consideration, by Mrs. Koron delivered to one R. H. Vose, of Portland, Oregon, who a few days later transferred the same to L. H. Wood, who in turn passed the documents on to one H. H. Hurst, who on or about June 12, 1925, sold the property to appellant. Mr. Hurst's name was written in the assignment of the lease, which had, up to the time of the transfer to him, remained in blank, and appellant's name was written into the bill of sale as purchaser thereunder. Neither the assignment of the lease nor the bill of sale were recorded.

Appellant admits that the second purchaser of the property from respondents, presumably the present owner thereof, obtained good title, he having purchased without notice, either actual or constructive, of appellant's claim.

We are of the opinion that, for error in the exclusion of testimony, the judgment appealed from must be reversed and the cause retried.

Appellant offered to prove by his own testimony that, on the day after he had purchased the lease and the furniture from Mr. Hurst, he went to Camas and saw the landlord, Mr. Stoller; that he then

told Mr. Stoller that he had purchased the lease and asked him if he would consent to the assignment thereof to appellant; that Mr. Stoller thereupon stated that he had no objection and that he consented to the transfer of the lease to appellant. Respondents objected to this testimony on the ground that the same was "incompetent, irrelevant and immaterial, hearsay evidence, not in the presence of the defendants, of a material fact or statement which cannot be proven orally," which objection the trial court sustained.

Assuming, without deciding, that Mr. Stoller's consent was necessary to the validity of the transfer of the lease to appellant, and that appellant was obliged to make proof of such consent as a part of his *prima facie* case, we are of the opinion that the trial court erred in sustaining respondents' objection to the testimony offered. The original lease did not require that the lessor give his consent to any assignment thereof *in writing,* and, under the provision of the lease above quoted, we see no reason why an oral assent by the landlord to the transfer to appellant would not be sufficient. If, then, this agreement on the part of Mr. Stoller to accept appellant as his tenant could rest in parol, appellant, as a party to this agreement with Mr. Stoller, could testify concerning the same, even in an action between himself and Mr. Stoller's original lessees, the respondents herein, to which action Mr. Stoller himself was not a party.

The supreme court of Illinois, in the case of *Williams v. Jarrot,* 6 Ill. 120, said:

"The general rule of the common law is, that parol evidence is admissible to prove the sale, delivery and ownership of personalty."

In the case of *Barker v. Bradley,* 42 N. Y. 316, 1 Am. Rep. 521, the court held, in an action against executors, that the plaintiff could show by parol testimony an

agreement between defendants' testator and a third party whereby defendants' testator agreed to pay an account due from the third party to the plaintiff. It appeared that some writings had been later signed in part execution of the parol agreement, but the court held these writings were not executed for the purpose of embodying the entire agreement in writing, but that it was the intention of the parties that the agreement rest in parol, and that it was competent for the plaintiff to prove by oral evidence the parol agreement upon which the action was instituted.

The supreme court of Oregon, in the case of *Hotel Marion Co. v. Waters,* 77 Ore. 426, 150 Pac. 865, held that, in an action to recover rent pursuant to a written lease, the defendant was entitled to introduce parol testimony concerning the assignment of the lease to a third party and the consequent release of defendant from liability thereon.

In the case of *Bourn v. Beck,* 116 Kan. 231, 226 Pac. 769, an action for slander of title, it was held competent for the plaintiff to testify concerning his conversations with a third party concerning the proposed deal between them, which plaintiff alleged was interfered with by the defendants. The court said:

"Bourn was permitted to testify as to his conversations with Burton concerning the proposed trade between them. This is objected to on the ground that the testimony was hearsay and included self-serving declarations. The objection is not well taken. The evidence was not introduced in order to persuade the jury of the existence of some fact by showing them that Bourn or Burton had at some time said that it existed. The purpose was to show that an oral agreement was reached by the two, and the primary evidence of that was what each said at the time; the question at issue was whether or not words had been used creating a tentative contract. The evidence was of a 'verbal act.'

" 'The theory of the hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the hearsay rule does not apply.' (3 Wigmore on Evidence, 2nd ed., § 1766.)''

In 2 Jones on Evidence (edition 1913), p. 649, is found the following:

''It is hardly necessary to cite authorities to the obvious proposition that when proof is to be made of a *parol contract,* or when for other reasons the statements of a person are relevant, such statements may be proved by third persons who were present as well as by the one who used the language. In such case the statements are not hearsay, but *substantive evidence.* The following is an apt illustration: A was the owner of an omnibus and delivered it to C under an agreement that he might take it and use it, and that it should become his property on payment of one hundred and fifty dollars, but if he failed to pay that sum, it should remain the property of A, and C should pay a reasonable price for the use of it. No time of payment or terms for its use were ever agreed upon; and no part of the price was ever paid. C took the omnibus, and repaired it, and painted his name upon it, and used it until January, 1855, when it was attached as his property at the suit of B and sold on execution to B. After the seizure and before the sale, the attaching officer and the attorney of B had notice that it was A's property. A called a witness to prove the agreement under which the omnibus was delivered to C. B objected, because he was not present at the interview, and because C might be called as a witness. The court, in confirming the admission of the evidence, said: 'The evidence offered to prove the agreement of sale was clearly competent. It was not hearsay, but legal proof of a contract of which there was no other

or better evidence. It was evidence of a fact, and not of a mere conversation or declaration. It being necessary to prove the agreement, of which there was no written evidence, it might be shown by the testimony of anyone who was present when it was made. It was not necessary to prove it by the testimony of one of the parties to the contract. His evidence might have been more satisfactory and decisive; but it was no better evidence, in a legal sense, than that of any third person who was present when the agreement was made.' [The quotation being from the opinion of the court in the case of *Blanchard v. Child,* 7 Gray (Mass.) 155.]''

Mr. Wigmore, in the second edition of his work on Evidence, vol. 3, § 1770, p. 778, lays down the rule as follows:

''Where the *utterance of specific words* is itself *a part of the details of the issue under the substantive law and the pleadings,* their utterance may be proved without violation of the Hearsay rule, because they are not offered to evidence the truth of the matter that may be asserted therein.

'' (1) In issues of *contract* in general, this use of utterances is of course common. In particular:

'' (a) *The making of a contract* necessarily involves utterances by conversation, letter, telegram, and the like; and these are admissible under the issue.''

Any contention that appellant's evidence should have been rejected for the reason that Mr. Stoller's evidence would have been of a better character is answered by the rule laid down in 22 C. J., p. 979, as follows:

''The courts have repeatedly held that the best evidence rule does not apply to parol evidence so as to exclude the otherwise competent testimony of a witness on the ground that another witness who might give more conclusive evidence ought to be called . . . ''

In the same volume, on page 996, is found the following concerning proof of title to personal property:

"Where the title to personal property is in issue, and it appears that the title is evidenced by a bill of sale or other similar written instrument, it is generally held that the writing is the best evidence, and parol evidence is not admissible unless the instrument is lost or its absence is otherwise satisfactorily explained. There is, however, authority to the effect that title to personalty can be shown by parol, even though there is a writing, not produced, evidencing the same fact, at least where the title is not a matter of record, or where the witness bases his statement upon his own knowledge, and the written evidence consists merely of entries made by him from such knowledge. So also, where the title to personal property is not directly in issue and is only collaterally involved, or it is necessary for a party to make only a *prima facie* showing of ownership, the best evidence rule is not applicable and the title or *prima facie* right of ownership may be proved by parol evidence, even though the bill of sale, or other instrument transferring title, is required by statute to be recorded."

We accordingly hold that the testimony offered by appellant concerning the consent of Mr. Stoller to the transfer of the lease to appellant constituted primary or original evidence concerning a fact which appellant was entitled to prove as part of his case in chief, and that the trial court erroneously sustained respondents' objection thereto.

In regard to the bill of sale signed by Mrs. Koron, purporting to convey the furniture and equipment in the hotel, respondents argue that, as the same was signed by the vendor, with the place for the name of the grantee left blank, and as the instrument in that condition was passed from one vendee to another, no grantee appearing therein until appellant's name was written in at the time he succeeded to Mr. Hurst's rights, it should be held that appellant's title is de-

fective for the reason that a bill of sale lacking a grantee is void, and that, for this reason, respondents' motion for a nonsuit was properly granted.

Such an instrument as that with which we are here concerned, executed by the vendor, no vendee being named therein, is not necessarily void. *Rehm v. Reilly,* 161 Wash. 418, 297 Pac. 147. From the record before us, it cannot be said, as matter of law, that the rapid-fire changes of ownership of the lease and furniture were for any reason ineffective or void. We are dealing only with the question of whether or not appellant made a *prima facie* case.

Under the circumstances here shown, appellant's case is not fatally defective because the bill of sale was executed without containing the name of the grantee, or because the same was not recorded. Respondents are not creditors of appellant or of his immediate grantor, within the provision of the section of the statute requiring that bills of sale be recorded. Rem. Comp. Stat., § 5827. Respondents held claims against the property under a mortgage, but the record or non-record of the bill of sale nowise affected their lien.

As to the demand made by appellant for possession of the hotel property, we hold that the evidence shows, *prima facie,* that sufficient demand was made. Appellant testified that he informed the person in charge of the hotel that he had bought the lease and the furniture, that he demanded possession of the hotel from the person in charge thereof, which demand was refused, and that he endeavored to find respondents in order to demand of them personally that he be let into possession, but that he was never able to ascertain respondents' whereabouts. It also clearly appears from respondents' answer that they had at all times

denied appellant's title, or that he had any right of possession.

It appears, *prima facie*, at least, from the record, that the lease and furniture, upon being sold by respondents to Mr. and Mrs. Koron, became their community property. Mrs. Koron undertook to manage the hotel, and to transfer the lease and sell the furniture. To the assignment of the lease she signed her husband's name, by herself, and she individually signed the bill of sale. Mrs. Koron testified that she had authority from her husband to do what she did in connection with the hotel property, and that he subsequently ratified her acts.

The trial court seems to have been of the opinion that appellant could show the subsequent ratification of these acts by Mr. Koron, but could not by the testimony of Mrs. Koron show that she had from her husband authority to represent him and the community in dealing with the property. It is, of course, true that an agency cannot be established by the testimony of third parties as to declarations of the agent, but the agent himself may testify concerning his authority. In the case of *Beeler v. Pacific Fruit & Produce Co.*, 133 Wash. 116, 233 Pac. 4, the court said:

"While it is true that agency cannot be proved by the testimony of third parties as to the declarations of the agent made to them, the situation here is not that. Here the agent is testifying directly as to his authority, and we have heretofore held that such testimony is as admissible coming from the agent on the stand, as the contrary evidence would be from the principal as a witness."

It is probable that upon a retrial of the action these questions will not arise, as more satisfactory testimony along the line indicated will probably be produced. In so far as the questions here presented are

concerned, we hold that appellant, *prima facie,* established a case.

The judgment appealed from is reversed, with instructions to grant appellant's motion for a new trial.

MAIN, PARKER, HERMAN, MITCHELL, HOLCOMB, and BEELER, JJ., concur.

TOLMAN, C. J. (dissenting)—While I agree that title to personal property may be established by parol, yet I fear that the majority has misapplied the rule in this case. I apprehend that the true rule to be here applied is shown in the quotation by the majority from 3 Wigmore on Evidence (2nd ed.), § 1770; and weight should be given to the words, "because they [the words uttered] are not offered to evidence the truth of the matter that may be asserted therein."

Here the contrary is the case. The burden was upon the appellant to establish his title to the lease or leasehold interest thereby created. To do this it was incumbent upon him to show an assignment of the lease to him with the consent of the landlord. The only attempt made to show the consent of the landlord was the offer of the testimony which the trial court rejected, and therefore the only purpose of testimony as to what the landlord said was to prove, as the truth, that the landlord consented to the assignment. I can not agree that one may prove his own title by giving hearsay testimony of what another, not a party to the action, said in some private conversation not in the presence of those sought to be bound thereby. To that extent, I dissent.

MILLARD, J., concurs with TOLMAN, C. J.